## SIMEON H. HUSE *v.* WILLIAM H. PRESTON.

### *Evidence. Relevancy. Hearsay.*

In trespass for cattle, grain, &c., attached in February, 1877, as the property of H., plaintiff testified that in 1869 and 1871 he let H. have money with which to buy stock, which was to be plaintiff's, and that the property in question was either the increase of stock bought therewith, or was purchased with the proceeds thereof. In support of his claim he introduced in evidence a written contract under seal, dated January, 1874, whereby it appeared that H. demised his farm to plaintiff, agreeing to remain in possession and carry it on as plaintiff's agent, and whereby, after reciting that the stock thereon was purchased by H. as plaintiff's agent, that H. agreed that the stock and increase and the proceeds of the farm should remain plaintiff's. Defendant introduced evidence tending to show that plaintiff did not let H. have money, and that H. dealt with the property as his own. It appeared that in January, 1874, H. leased the farm and stock thereon to M. for one year, and that plaintiff knew it. Defendant, on the *bona fides* of plaintiff's claim, offered to show that on the beginning of M's term, when the property was appraised to M., and at the end thereof, when it was appraised back to H., it was appraised in H's name, and that no mention was made of any claim on the part of plaintiff. *Held,* that the evidence offered was relevant to the question as to the character and quality of the lease to plaintiff, and the ownership of the property as to H's creditors.

Defendant also offered to show by A. that while. H. occupied under his agreement with plaintiff, he frequently borrowed money, and that on all those occasions he borrowed of various banks on his own notes, signed by his father and the witness as sureties—never on notes signed by plaintiff as either principal or surety. *Held,* relevant to the question as to the relations of plaintiff and H. in respect to the transactions of H. while the pretended agency existed.

On cross-examination of plaintiff, the fact was brought out that there had been a change made in the date of H's lease to him. Plaintiff introduced his daughter as a witness, who testified that in 1874, after M. took possession, plaintiff changed the date of his lease from 1872 to 1874. She was then allowed to testify that plaintiff then said, not in presence of the defendant nor of any of the attaching creditors, that "he guessed as long as M. was going onto the farm it was best to change the year." *Held,* hearsay and inadmissible.

TRESPASS for nine cows, one yoke of oxen, one horse, seven young cattle, twenty-one sheep, two shotes, and two hundred bushels of oats. Plea, general issue and notice of special matter. Trial by jury, June Term, 1878, Caledonia County, Ross, J., presiding.

It appeared that in the fall of 1870, Charles R. Hoag purchased of his father a farm in Waterford, of which he took possession, and which he continued to occupy from that time until February 3, 1877, except one year from January, 1874, as hereinafter stated, and to carry on, as far as appeared to the public, as farmers generally carry on their farms. During all that time the title to the farm appeared of record to be in said Hoag. On February 3, 1877, he, for some reason that did not appear, secretly left the farm, and went to parts unknown, and never returned. Within a few days thereafter the defendant attached the property in question, which was then on the farm where said Hoag's family still lived, as the property of said Hoag, on three several writs in favor of three different parties, among whom were the said Hoag's father, and subsequently took it away and sold it. No question was made as to the regularity of said writs nor of any of the proceedings thereon. It appeared further that the plaintiff was the father-in-law of said Hoag. His testimony tended to show that at some time in 1868 or 1869 he let Hoag have $200 with which to buy a yoke of oxen other than the oxen in question, and that they were to be the plaintiff's; that, in the spring of 1871, he let him have $1,000 with which to buy stock to place on the farm, and that the stock so bought was to be and remain the plaintiff's; that Hoag had authority to sell the same for him, and with the proceeds thereof to buy other stock; and that the stock in question was either the increase of that that was originally bought for the plaintiff, or was bought with money derived from the sale of the orig-

inal stock or the increase thereof. In support of his claim of title to the property in question the plaintiff introduced in evidence an instrument of the date of January 23, 1874, signed and sealed by himself and Hoag, which was as follows:

I, Charles R. Hoag, of Waterford, . . . of the first part, and Simeon Huse of the second part, witnesseth : That I, the said Hoag, of the first part, in consideration of the covenants and agreements hereinafter made and expressed to be performed and kept by the said Huse, of the second part, have, and hereby do, lease and to farm let to him the farm where I now reside, being in Waterford and known as the Quimby farm, upon which there now is upon said farm twelve cows, ten calves, and one pair of oxen, which the above named stock was purchased by the said Hoag for said Huse as his agent. The said Hoag is to remain upon said farm and take care of said stock, and carry on the farm in a good husbandlike manner, as the agent of said Huse, for which the said Huse is to pay said Hoag for his services for said agency and his labor what the same may be worth, out of the proceeds of said farm and stock; and it is further agreed that all the stock and increase thereof and the proceeds of said farm are to be and remain the property of said Huse.

The plaintiff testified that the lease was made in 1872, and that Hoag occupied the farm thereafter as his agent. And the plaintiff never had any possession of the farm nor of the produce or stock thereon other than such as was given by the lease from Hoag to him, and Hoag's occupancy thereunder. But the lease was never recorded nor made public until February 9, 1877, when it was filed in the town clerk's office for record. The defendant introduced evidence tending to show that the plaintiff never let Hoag have money as claimed, and that a large part of the stock was bought with money borrowed by Hoag at different banks on notes signed by himself and apparently indorsed and paid by his father after the beginning of this suit, although his father denied the genuineness of his signature on some or all but one of them. There was no testimony as to where the oats came from except in the fact that they were found on the farm at the time of the attachments. The plaintiff claimed title to them by virtue of his lease only. The defendant also offered testimony tending to show that Hoag dealt with the farm and stock as his own, buying and selling without consulting the plaintiff, and that none of Hoag's neighbors nor any of the attaching creditors ever knew of any

claim of ownership thereof by the plaintiff. It appeared that in January, 1874, Hoag in his own name leased the farm and stock to James Miles for one year, whom he left in sole possession thereof for that term. As bearing on the *bona fides* of the plaintiff's lease and of his claim to the property in question, the defendant offered to show by one William Adams, who appraised the stock and produce on the farm to Miles at the beginning, and back again to Hoag at the end, of Miles's term, that both appraisals were made in Hoag's name, that no mention was made on either occasion of any claim or title on the part of the plaintiff, and that the witness never had any knowledge of such claim or title until the bringing of this suit. But the testimony was excluded, to which the defendant excepted. The plaintiff testified that during that year he lived in an adjoining town, and that, though he knew of the letting to Miles, he knew nothing of a written lease.

The defendant also offered to show by Adams that frequently during the years that Hoag occupied the farm he had occasion to hire money, and that on those occasions the notes on which he hired it were signed by his father and the witness as sureties, and never by the plaintiff either as surety or as principal. But the testimony was excluded; to which the defendant excepted.

In cross-examining the plaintiff the defendant called out the fact of a change in the date of Hoag's lease to him. The plaintiff introduced as a witness his daughter, Hoag's wife, who testified that in 1874, after Miles took possession of the farm, the plaintiff changed the date of the lease from 1872 to 1874. She was also allowed to testify, the defendant objecting, that the plaintiff then said, not in the presence of the defendant nor of any of the attaching creditors, that " he guessed as long as Miles was going onto the farm, it was best to change the year "; to which the defendant excepted.

That part of the bill of exceptions relating to the charge and the exceptions thereto was as follows:

The court charged that the plaintiff could recover for the oats, if the jury found said lease was valid, and made for the honest purpose of securing the plaintiff his property or the payment for it, but would be invalid if made to cover the property of Hoag,

and keep it from his creditors. At the close of the charge the defendant's counsel excepted to this portion of the charge because the court failed to charge in reference to the effect of a want of change of possession in regard to the oats. This was the first the attention of the court had been called to that subject.

The court charged that the plaintiff might recover for a certain part of the stock bought by Hoag in January, 1877, and paid for by his own note indorsed by his father, which note had since been paid by the indorser, if they should find that the same was in fact bought by Hoag as the agent of the plaintiff, for the plaintiff, and as his property, notwithstanding the purchase was apparently in his own name and without making known his agency, and paid for as last above stated; to which the defendant excepted, on the ground that there was no evidence tending to show said purchase to have been made for the plaintiff, or as his agent. The only testimony bearing on this question was the plaintiff's evidence that said Hoag agreed, when he took the $1,000 in 1871, to buy stock for the plaintiff with the $1,000 as above stated. As to the understanding that he was to have the right to sell the same, and buy other stock with the proceeds, the plaintiff testified that he had no knowledge whether his money, or the proceeds of any of his stock or crops, went to purchase the property in question. There was testimony tending to show that some of the cows were those originally purchased with $1,000, and others their offspring.

The defendant requested the court to charge, 1, that the plaintiff could not recover for the taking of any of the property in question, unless the property was bought with the plaintiff's money; 2, that unless Hoag was the agent of the plaintiff, substantially as plaintiff claimed, there was no evidence tending to show that any of the property in question belonged to the plaintiff at the time it was taken by defendant; 3, that the secrecy with which the business was transacted was a fact to be considered in determining whether Hoag acted as the agent of the plaintiff as plaintiff claimed; 4, that the evidence of Miles, if credited, tended to show that the lease of 1872 was fraudulent; 5, that if Hoag purchased stock as his own in 1871, and in 1872, for the first time, agreed that it should be the property of the plaintiff,

32

and he should conduct it as agent for the plaintiff, such arrangement, without change of possession, would be void as to the defendant and attaching creditors; 6, that if the money that the plaintiff claims he let Hoag have, was loaned to Hoag, it became his money, and the stock purchased therewith became and was his as to attaching creditors, so long as it remained in his possession.

The court substantially complied with all the requests, as it understood them, except the first, and charged, in substance, that if the plaintiff satisfied them by a fair balance of testimony that he let Hoag have the $200 and the $1,000 as claimed by him, under an honest, *bona fide* agreement that he was to take the same and buy stock for him, and he did so, and with the further arrangement and understanding that he might sell such stock and re-invest the proceeds in other stock, and that such arrangement was not made for the purpose of covering up Hoag's property, nor to hinder and delay his creditors in collecting their debts out of his property, then the plaintiff would be entitled to recover for such of said property as he satisfied them Hoag bought under that arrangement and agreement for and as the property of the plaintiff, whether he disclosed his agency at the time of making such purchase or not, and whether he actually paid for it with the original money, or proceeds of stock sold by him from stock so purchased, or bought it on his own credit, or with money raised by him to replace money which he had used for other purposes, which had come from the sale of such stock; that if the money was loaned by the plaintiff to Hoag it would render the arrangement void, as the money and the stock purchased therewith would be Hoag's, and if the stock was once Hoag's, the arrangement would be void as to such stock, without a change of possession; and charged as to the lease as before stated. It was agreed that if plaintiff recovered, it should be for the value of the property as shown by defendant's sale, so far as he should be found entitled to recover. The oats sold for $17.46, as his return shows, in spring of 1877. The court called the attention of the jury in a general way to such portions of the testimony as it thought relevant to the various propositions submitted, and explained said several propositions to the jury.

To the failure of the court to comply with said requests, and to the charge given upon the subject of those requests, the defendant excepted. Verdict for the plaintiff.

*Belden & Ide*, for the defendant.

The defendant should have been permitted to show the circumstances of the appraisals by Adams. The principal question was as to whether the lease to the plaintiff was *bona fide*. Those circumstances were relevant upon that question. *Moon* v. *Hawks*, 2 Aik. 390 ; Story Agency, ss. 55, 91, 92 ; 1 Phil. Ev. 141 ; *Willis* v. *Farley*, 3 C. & P. 395 ; *McBride* v. *Thompson*, 8 Ala. 650 ; *Cox* v. *Eastley*, 11 Ala. 362 ; *Hayward Rubber Co.* v. *Duncklie*, 30 Vt. 29 ; *Alger* v. *Andrews*, 47 Vt. 238.

It was erroneous to allow Hoag's wife to testify as to the plaintiff's declarations at the time he changed the lease. That declaration was not part of the *res gestœ.* *Barrows* v. *Stevens's Estate*, 39 Vt. 378. It was the declaration of a party made subsequent to the execution of the instrument, and evidence of it was not admissible to defeat or support the instrument. 1 Phil. Ev. 88, note 4 ; *Kittles* v. *Kittles*, 4 Rich. 422 ; *Glen* v. *Grover*, 3 Ala. 212 ; *Garland* v. *Harrison*, 17 Miss. 282.

The charge was erroneous.

*O. T. Brown* and *Dickey*, *Blodgett & Dickey*, for the plaintiff.

The testimony of Adams was properly rejected. The only question is, whether the contract between Hoag and the plaintiff was such that Hoag's creditors could attach the property. Hoag's omission to disclose his agency had no effect on the rights of his principal. *Collins* v. *Butt*, 10 Wend. 399 ; *Hall* v. *Williams*, 27 Vt. 405 ; *Waldo* v. *Peck*, 7 Vt. 434.

The testimony of Hoag's wife was properly admitted. *Danforth* v. *Streeter*, 28 Vt. 490 ; *Rollins* v. *Strout*, 6 Nev. 150 ; *Hamilton* v. *State*, 36 Ind. 281. Besides, its admission did not injure the defendant, and therefore furnishes no ground for reversal of the judgment. *Victor Sewing Machine Co.* v. *Weeks*, 49 Vt. 342 ; *Sampson* v. *Warner*, 48 Vt. 247.

No exception lies to the charge given, nor to the refusal to charge as requested.

The opinion of the court was delivered by

BARRETT, J.   The plaintiff's title to the property sued for depended on the lease in question and the transactions of the parties to it under its terms and provisions.   Its validity was assailed on the score of fraud as against creditors, both in fact and in law. The testimony offered to be given by Adams as a witness, was as to what was done by Charles in handling and administering that property under the lease as the agent of the plaintiff, and with the knowledge of the plaintiff.  His handling and administration were legitimate to be shown as bearing on the subject of the real character and quality of the lease, and the true ownership of the property as to creditors of Charles.   That testimony should have been received.

2d.   The testimony of Adams as to the hiring of money by Charles, and the giving and signing of the notes, should have been received.   The facts offered to be shown were very significant, as bearing on the real relation of the plaintiff and Charles in respect to the business transactions of Charles while said pretended agency was existing and he was professing to act under it.

3d.   The evidence objected to of the plaintiff's daughter should have been excluded.   The plaintiff had, as a witness and party, made known the fact of the change in the date of the lease, and was competent to give his reasons for so doing.   What he had said, as stating a reason, to others and out of court, would not be evidence to show that such was the reason.   The fact of the change was in the case, for such effect as might behoove.   If it was important for him to forefend injurious effects to himself by showing circumstances and occasions, it should be done by legitimate evidence.   But it was not proper for him to prove the hearsay of himself to that intent.

The bill of exceptions presents the exceptions to the charge in such a fragmentary and confused way, that we find it very diffi- cult to determine precisely the ground and point of the several exceptions.   Portions of the charge, taken by themselves, seem to be erroneous.   Looking further along, what is said in a more general way, and without apparent special reference to some par-

ticular portions to which exception is taken, it becomes debatable whether what is thus said should not be construed as intending to modify the more special portions of the charge. As the judgment is to be reversed on the points as to the evidence, we refrain from saying more as to the charge—hoping that when the case shall be before this court again, it will not encounter the present difficulty as to the exceptions to the charge.

*Judgment reversed, and cause remanded.*